# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PROSPERITY BANCSHARES, INC., | ) | |
| and PROSPERITY BANK, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 12-cv-03179 |
| | ) | |
| TOWN AND COUNTRY | ) | |
| FINANCIAL CORPORATION and | ) | |
| TOWN AND COUNTRY BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on the Motion for Preliminary Injunction ("Motion") filed by Plaintiffs, Prosperity Bancshares, Inc., and Prosperity Bank (collectively "Prosperity") (d/e 2).  Prosperity seeks a preliminary injunction prohibiting Defendants, Town and Country Financial Corporation and Town and Country Bank (collectively "Town and Country"), from using Prosperity's registered trademarks, "Prosperity Bancshares, Inc." and "Prosperity Bank." (collectively the "Prosperity Marks").  On August 1, 2012 and August 9, 2012, this Court held a

hearing on the Motion where both parties presented evidence and called witnesses.  Prosperity called Tim Timanus, Chief Operating Officer of Prosperity, and Charlotte Rasche, Executive VP and General Counsel for Prosperity.  Town and Country called Micah Bartlett, Chairman, President, and Chief Executive Officer of Town and Country.  Prosperity's Motion is DENIED because Prosperity has not demonstrated a likelihood for success on the merits in this trademark infringement action.

## I. <u>BACKGROUND</u>

Prosperity began offering banking products and services under the Prosperity and/or Prosperity Bank name in 1983.  Prosperity is currently a publicly traded company with shareholders throughout the country and 213 full-service banking locations in Texas.

Prosperity recently entered into an agreement to acquire Coppermark Bancshares, Inc., an Oklahoma Corporation.  Pls.' Supplement at 1-2.  The agreement has not been completed.  Coppermark has banking locations in Oklahoma City, Edmond, and

Norman, Oklahoma.  Coppermark also has banking locations in Dallas and Plano, Texas.

Prosperity's services and products include checking accounts, savings accounts, money market accounts, IRA accounts, loans, trust services, debit cards, credit cards, and online banking.  One hundred and forty-thousand Prosperity customers nationwide use the online banking services.  Tr. 47.  This includes the 208 Prosperity customers in Illinois, none of whom live in Quincy, who have about $6 million in loans and $2 million in deposits.  Tr. 11-12.

Any Prosperity customer can use the online services at an Internet accessible location via Prosperity's registered domain name www.prosperitybanktx.com.  But customers must appear at a physical bank branch in Texas to open an account before using Prosperity's online banking services.

Prosperity Chief Operating Officer Tim Timanus testified that Prosperity continually looks for growth opportunities.  Tr. At 24-25.  For example, Prosperity advertises on Sirius XM Satellite Radio channels

including CNBC, Bloomberg, and Fox.  Prosperity's expenditures for these advertisements totaled $56,000 in 2009, $103,700 in 2010, $83,648 in 2011, and $38,250 in 2012.  Tr. 19-21 (Pls.' Ex. 2). Moreover, Prosperity advertises on its Internet website, through social media, on billboards along Texas interstate highways, and in advertisements on a sign behind the batter's box at Houston Astros baseball games, which are broadcast on television.  Some Astros games are broadcast outside of Texas, including in Illinois.  Tr. 48-49.  Finally, Prosperity has received recognition for the quality of its banking services in three national magazines including <u>Forbes</u>, <u>The American Banker</u>, and <u>Bank Director</u>.  Tr. 12.

On May 18, 2012, Defendants Town and Country opened the bank's newest branch location in Quincy, Illinois, and named the branch Peoples Prosperity Bank.  Illinois and Federal banking regulations require that Town and Country always identify Peoples Prosperity Bank in Quincy as a division of Town and Country.  Tr. 83.  The Quincy branch store-front sign reads Peoples Prosperity Bank A Division of Town and

Country Bank.  Prosperity Bank appears larger than other words on the sign.  The words Peoples Prosperity Bank appear in dark red bold font.  A Division of Town and Country Bank appears in a light gray font.  The sign appears as follows:



Additionally, Town and Country's website www.townand countrybank.com features a logo on the top, left corner of almost every web page that states: Town and Country Bank Peoples Prosperity Bank SidebySide.  Peoples and Prosperity Bank appear to be the same size in the logo.  The logo appears as follows:



Town and Country's main website also has a web page devoted specifically to the Quincy branch accessible at www.townandcountry

bank.com/customer-center/prosperity.  The web page identifies the
Quincy branch as Peoples Prosperity Bank a division of Town and
Country Bank.  However, text on portions of Town and Country's
website refers to the Quincy branch as solely Peoples Prosperity Bank.

Further, Town and Country registered the domain name
www.ourprosperity.com with an Internet registrar and maintains a
Facebook page at www.facebook.com/townandcountrybank.com that
references the 2012 opening of Peoples Prosperity Bank in Quincy.
Internet users who enter the www.ourprosperity.com domain name are
automatically redirected to Town and Country's home page at
www.townandcountrybank.com.

Prosperity first learned about the Quincy branch bank name on or
about April 23, 2012.  Prosperity's Chief Lending Officer read an article
in the Quincy Harold Whig newspaper on that date.  Tr. 33.

According to Prosperity, Town and Country initially planned to
name the Quincy branch "Prosperity Bank."  Pls.' Mem. Supp. Mot. at 7-
8.  Prosperity also claims Town and Country knew about the Texas

Prosperity Bank as early as February 2012 and, despite this knowledge, used a name confusingly similar to the Prosperity Marks.  Tr. 102-05.

Town and Country admits to knowing about the Texas Prosperity bank in February 2012 and learning about the federally registered Prosperity Marks on April 17, 2012.  Tr. 104, 110.  Nonetheless, Town and Country Chief Executive Officer Micah Bartlett stated that Town and Country chose the name Peoples Prosperity Bank to honor the original name of the Quincy branch: Quincy Peoples Savings and Loan Association.  Bartlett testified that Town and Country found that people in Quincy generally referred to the original bank as Peoples.  Tr. 87.  Bartlett also stated that Town and Country considered a number of names with the word Peoples, such as, Peoples First.  Tr. 87.

Ultimately, however, Town and Country settled on the name Peoples Prosperity.  Town and Country believes the word Peoples pays "honor back to that original name" and that together with the word "Prosperity" "reflect[s Town and Country's] unique brand position" as "well [as] what it is that [Town and Country] stands for from a value

proposition, particularly as it relates to improving the prosperity of people." Tr. 87-88, 106-07.

On or about April 25, 2012, Prosperity's general counsel, Charlotte Rasche, contacted Town and Country by telephone and requested that the Quincy branch stop using the Prosperity Marks or any other marks confusingly similar to the Prosperity Marks.  Pls.' Mem. Supp. Mot. at 7-8.  Prosperity states that Town and Country conceded the Prosperity name could cause confusion.  Id.  Prosperity asserts this led to Town and Country's decision to call the Quincy branch Peoples Prosperity Bank rather than just Prosperity Bank.  Id.  Prosperity continues to argue that the Quincy branch bank name Peoples Prosperity Bank is confusingly similar to the Prosperity Marks.  Id.

On April 30, 2012, Town and Country filed for federal registration of the mark, Peoples Prosperity Bank a division of Town and Country Bank SideBySide.  Town and Country also sought to register a design depicting the proposed name.  Pls.' Mem. Supp. Mot. at 8.

On May 11, 2012, Prosperity sent a letter to Town and Country

providing formal notice of Prosperity's federal registration of the Prosperity Marks and demanding Town and Country cease and desist using the Prosperity Marks.  Prosperity also states that it made additional requests in May and June 2012, asking Town and Country to cease and desist using any marks confusingly similar to the Prosperity Marks. However, Town and Country continues to use the name Peoples Prosperity Bank a division of Town and Country and the domain name www.ourprosperity.com.

On May 30, 2012, Town and Country abandoned the original federal registration application submitted on April 30, 2012.  Town and Country also submitted a new application for the mark, "Peoples Prosperity Bank."  The new application did not include a design.

Prosperity filed a four-count Complaint on July 3, 2012 (d/e1), alleging that Town and Country is infringing on Prosperity's federally registered trademarks that were issued to Prosperity on May 25, 2004 in the names "Prosperity Bank" (#2,795,987) and "Prosperity Bancshares, Inc." (#2,846,330).  Count I alleges federal trademark infringement

under 15 U.S.C. § 1114(1) and seeks monetary damages and/or injunctive relief pursuant to 15 U.S.C. §§ 1117(a) and 1114(1). Count II alleges unfair competition under common law and the Lanham Act, 15 U.S.C. § 1125, and seeks injunctive relief. Count III alleges dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c), and seeks monetary damages and/or injunctive relief pursuant to 15 U.S.C. §§ 1117(a) and 1125(c). Count IV is an Illinois common law claim for trademark infringement and unfair competition.

On July 5, 2012, Prosperity filed the instant Motion for Preliminary Injunction (d/e 2) against Town and Country's use of the Quincy branch bank name Peoples Prosperity Bank and the domain name www.ourprosperity.com.

## II. <u>JURISDICTION AND VENUE</u>

This Court has subject matter jurisdiction over Counts I, II, and III because those counts present federal questions under the Lanham Act, 15 U.S.C. §§ 1114(1), 1117(a), and 1125. <u>See</u> 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the remaining state law claims.

See 28 U.S.C. § 1367(a).

Venue is proper because Defendants are located in this judicial

district and a substantial part of the events giving rise to Plaintiffs' claims

occurred in this judicial district.  See 28 U.S.C. § 1391.

### III. LEGAL STANDARD

Parties moving for a preliminary injunction must demonstrate a

likelihood of success on the merits of the claim, no adequate remedy at

law, and irreparable harm absent the injunction.  Promatek Indus., Ltd.

v. Equitrac Corp., 300 F.3d 808, 811 (7th Cir. 2002) (citing Ty, Inc. v.

Jones Group, 237 F.3d 891, 895 (7th Cir. 2001)).  If a party meets these

conditions a court must then consider whether an injunction would cause

the nonmoving party irreparable harm.  Promatek Indus., Ltd., 300 F.3d

at 811 (citing Ty, 237 F.3d at 895).  Courts must also address the

consequences to the public of granting or denying an injunction.

Promatek Indus., Ltd., 300 F.3d at 811.  This balance of harms inquiry

involves a sliding-scale approach.  Under this sliding-scale, a plaintiff with

a lower chance for success on the merits must demonstrate more readily

that the balance of harms weighs in that plaintiff's favor.  Id.  Finally, a

preliminary injunction is an exercise of far-reaching power, never to be

indulged in except in a case clearly demanding it.  Girl Scouts of Manitou

Council, Inc. v. Girl Scouts of the U.S., Inc., 549 F.3d 1079, 1085 (7th

Cir. 2008).

## IV.  ANALYSIS

To prevail on the merits in this trademark infringement action,

Prosperity must establish that: (1) Prosperity has protectible trademarks,

and (2) consumers in the marketplace would be likely to confuse Town

and Country's use of the Quincy branch bank name and the domain

name www.ourprosperity.com with Prosperity and the Prosperity Marks.

Ty, 237 F.3d at 897 (citing Int'l Kennel Club of Chicago, Inc. v. Mighty

Star, Inc., 846 F.2d 1079, 1084 (7th Cir. 1988)).  At the preliminary

injunction stage, Prosperity must demonstrate "a better than negligible"

chance of succeeding on the merits to justify injunctive relief.  Personeta,

Inc. v. Persona Software, Inc., 418 F. Supp. 2d 1013, 1016 (N.D. Ill.

Dec. 21, 2005) (citing Ty, 237 F.3d at 897).

For the purposes of this Motion, the parties agree that Prosperity has protectible trademarks in the Prosperity Marks.  Defs.' Resp. at 10. Therefore, the analysis will focus on whether a likelihood of confusion exists between the Prosperity Marks and Town and Country's use of the Quincy branch bank name Peoples Prosperity Bank a division of Town and Country, and the domain name www.ourprosperity.com.

A.     **No Threat of Consumer Confusion Exists Between the Prosperity Marks and the Quincy Branch Bank Name Peoples Prosperity Bank A Division of Town and Country Because the Marks Are Different in Appearance and Because the Banks Operate and Use Their Marks in Different Locations**

To determine whether consumers in the marketplace would incorrectly associate the Quincy branch bank name Peoples Prosperity Bank a division of Town and Country with Prosperity and the Prosperity Marks, this Court must analyze: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff to

determine whether a likelihood for confusion exists in a given case.

Sullivan v. CBS Corp., 385 F.3d 772, 776 (7th Cir. 2004) (citing

Promatek Indus., Ltd., 300 F.3d at 812).

The parties disagree on the impact these factors have in this

consumer confusion analysis.  However, the similarity of the marks and

the area and manner of concurrent use factors weigh most heavily.

Therefore, the analysis concerning the Quincy branch bank name Peoples

Prosperity Bank will focus on those two factors.

1. **The Similarity of the Marks Factor Favors a Finding that No Likelihood for Consumer Confusion Exists Because the Quincy Branch Bank Name is Sufficiently Different in Appearance From the Prosperity Marks**

Prosperity argues that the Prosperity Marks, Prosperity Bancshares,

Inc., and Prosperity Bank, are virtually identical in appearance and

meaning to Town and Country's Quincy branch bank name Peoples

Prosperity Bank a division of Town and Country.  Pls.' Reply at 5.

Prosperity contends that these similarities heighten the likelihood for

consumer confusion in this case.

In Ty v. Jones Group, the Seventh Circuit determined that marks

are more similar if a common thread exists between them.  237 F.3d at
899-900.  In that case, the plaintiff marketed "Beanie Babies" and the
defendant marketed "Beanie Racers."  Id.  The Seventh Circuit found
having such similar marks with the common thread "Beanie" increased
the likelihood for consumer confusion.  Id.

Town and Country's bank name Peoples Prosperity Bank a division
of Town and Country and the Prosperity Marks do possess a "common
thread" through use of the word "Prosperity."  However, Town and
Country's use of the word "Peoples" and the phrase "a division of Town
and Country" distinguishes Town and Country's Peoples Prosperity Bank
name from the Prosperity Marks.  The products in Ty Inc. had no
distinguishing language to notify consumers that two separate entities
produced the "Beanie" products.  See id.

Further, Illinois and Federal banking regulations require Town and
Country at all times to identify the Quincy branch as "a division of Town
and Country."  Defs.' Resp. Ex. C. (citing Illinois Dep't of Fin. and Prof'l
Regulation, Div. of Banking, Commercial Banking Branch Names Policy

Statement).  These regulations are meant to ensure that consumers do

not mistakenly exceed FDIC insurance limits.  See id.

Town and Country has followed these regulatory requirements: the

words Peoples and a division of Town and Country Bank appear on the

Quincy branch's store-front sign; the Town and Country web page

www.townandcountrybank.com repeatedly addresses Peoples Prosperity

Bank as a division of Town and Country; and the Quincy branch's

welcome web page includes a letter from Town and Country Chief

Executive Officer, Micah Bartlett, that consistently refers to Peoples

Prosperity Bank as a division of Town and Country.

Almost every web page on Town and Country's website also

includes the previously displayed logo that states Town and Country

Bank Peoples Prosperity Bank SidebySide.  This includes a Town and

Country website page that features a January 18, 2012 story issued by

Town and Country with the headline "Four Area Commercial Lenders

Join Peoples Prosperity Bank."  The same logo also appears on the

Quincy branch's Internet welcome page that refers simply to Peoples

Prosperity Bank under the Frequently Asked Questions.  Consumers

viewing these web pages would see the logo in the upper left hand corner

and realize that Peoples Prosperity Bank in Quincy is affiliated with

Town and Country Bank.  The identifying language Town and Country

must use with the Quincy branch bank name Peoples Prosperity Bank

prevents a reasonable consumer from thinking Prosperity owns or

sponsors Town and Country's Quincy branch.

> 2. **The Area and Manner of Concurrent Use Factor Favors a Finding that No Likelihood for Consumer Confusion Exists Because the Quincy Branch Operates in a Separate and Distinct Geographic Area than Prosperity**

Prosperity also argues that the entities operate in overlapping

geographic areas further increasing the risk for consumer confusion.  In

support of this argument, Prosperity points to the 208 Prosperity

customers that live in Illinois and have access to Prosperity's Internet

banking tools.  Prosperity also asserts that it reaches beyond Texas

through the bank's continuing attempts to acquire new banking entities;

in advertisements on XM Satellite Radio; and on television during

Houston Astros baseball games.  Further, Prosperity has received national

recognition for the quality of its banking services in <u>Forbes</u>, <u>The</u> <u>American Banker</u>, and <u>Bank Director</u> Magazines.

In the past, courts have applied a per se rule that barred preliminary injunctions in cases involving potential competitors who operated in distinct geographic locations.  <u>See</u> <u>Dawn Donut v. Hart's Food Stores</u>, 267 F.2d 358 (2d Cir. 1959).  These courts reasoned that geographic boundaries limited overlap in competitors' consumer bases.  This prevented consumers from seeing two marks at the same time, thereby limiting the potential for confusion.  <u>See</u> <u>id.</u> at 364-65.

Prosperity argues, however, that technological advances in media have expanded marketing channels and enhanced information sharing. <u>See</u> <u>Circuit City Stores, Inc. v. CarMax, Inc.</u>, 165 F.3d 1047, 1056-57 (6th Cir. 1999).  In light of these changes, consumers currently have the ability to view similar marks, from anywhere, at any time.  <u>See</u> <u>e.g.</u>, <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199 (9th Cir. 2000) (explaining that the Web increases the potential for consumer confusion as consumers can view remarkably similar marks from anywhere, at the

same time, and on the same screen).

While Prosperity's assertions are true, geographic boundaries still play an important role in this and other cases. For example, in <u>Brennan's v. Brennan's Restaurant</u>, the Second Circuit affirmed an order denying a motion filed by Brennan's restaurant in New Orleans that sought a preliminary injunction against the New York defendant's use of the name "Terrance Brennan's Seafood and Chop House." <u>Brennan's v. Brennan's Restaurant</u>, 360 F.3d 125 (2d Cir. 2004). The Second Circuit found consumer confusion especially unlikely because eating at a restaurant requires physical presence rather than reliance on Internet or mail-order sales. <u>Id.</u> at 134. Because customers had to physically enter the restaurant in New Orleans or New York, it remained highly unlikely that a consumer would become confused about who sponsored the New York entity. <u>Id.</u>

In this case, both institutions offer online banking services. However, neither actually sells banking products online. Therefore, like a consumer wanting restaurant services, potential Prosperity or Town and

Country customers must appear at a physical branch to set up an account.  See id. at 134.  Only then can that customer gain access to either bank's online services.  This means that all Prosperity customers must appear at a physical bank branch in Texas, and perhaps in the near future, Oklahoma.

Likewise, a potential Town and Country consumer must appear at the branch in Quincy to set up an account before accessing the bank's online services.  Consumers who must appear at these banks in distinct geographic locations are not likely confuse Town and Country's Quincy branch bank name in Illinois with Prosperity and the Prosperity Marks in Texas or Oklahoma.  See id.

Because these entities operate many miles apart and use names that are not similar in appearance, no consumer would mistakenly believe that Prosperity sponsors or operates Town and Country's Quincy branch. Therefore, Prosperity has not demonstrated a better than negligible chance for success on the merits of this infringement claim.

**B.     Town and Country's Domain Name www.ourprosperity.com and the Prosperity Marks Are Not So Similar as to Cause Consumer Confusion**

Prosperity also asserts that Town and Country's use of the domain name www.ourprosperity.com infringes on the Prosperity Marks. Specifically, Prosperity asserts that the domain name is confusingly similar to the Prosperity Marks: Prosperity Bancshares, Inc., and Prosperity Bank.

In support of this argument, Prosperity relies on <u>Caterpillar Inc. v. Telescan Technologies</u>.  2002 WL 1301304 (C.D. Ill. Feb. 13, 2002).  In <u>Caterpillar</u>, the defendants maintained an Internet website that included a searchable listing of subscribing dealers who sold, among other things, heavy equipment.  <u>Id.</u> at *3 n.1.  To direct traffic to its website, the defendants registered domain names such as catusedequipment.com, catnewequipment.com, and caterpillarusedequip.com.  <u>Id.</u>

Caterpillar, the internationally known large equipment manufacturer, contended that these domain names were confusingly similar to the Caterpillar marks.  <u>Id.</u> at *1.  The court agreed because the

domain names contained some of the most famous marks in America,
and because the defendants' used the domain names to sell Caterpillar
equipment.  Id. at **1, 6.  The court also explained that the defendants
increased the likelihood for confusion by posting phrases on their web
sites such as "Caterpillar Used Equipment Website" and by purporting to
be an "A Listing Service for Caterpillar."  Id. at *3.

Caterpillar, however, is distinguishable from the instant case.  In
Caterpillar, the marks were arbitrary because the word "caterpillar"
described heavy equipment.  See e.g., Abercrombie & Fitch Co. v.
Hunting World, Inc., 537 F.2d 4, 9 n.6 (2d Cir. 1976) ("To take a
familiar example 'Ivory' would be generic when used to describe a
product made from tusks of elephants but arbitrary as applied to soap.").
Arbitrary marks are highly protected under trademark law because
consumers draw a strong connection between such marks and their
sponsors.  See Henri's Food Products Co., Inc. v. Tasty Snacks, Inc., 817
F.2d 1303, 1305 (7th Cir. 1987).  Consequently, when consumers see
the arbitrary Caterpillar mark modifying the term "new equipment,"

consumers believe that Caterpillar is the sponsor.

However, the Prosperity Marks are descriptive.  Specifically, the protected term "Prosperity" modifies the terms "Bank" and "Bancshares, Inc."  In this context, Prosperity describes a banking experience marked by success, especially with regard to economic well-being.  See Mil-Mar Shoe Co., Inc. v. Shonac Corp., 75 F.3d 1153, 1156 (7th Cir. 1996) (stating that descriptive marks particularize the product or service offered by identifying ingredients, qualities, or characteristics of the products or services).

Many companies can use a descriptive mark to describe their products.  This makes it less likely that consumers would draw a strong connection between the descriptive mark and a certain sponsor.  TCPIP Holding Co., Inc. v. Haar Communications, Inc., 244 F.3d 88, 100-01 (2d Cir. 2001).  Such is the case when a consumer sees the descriptive term "prosperity" in the domain name www.ourprosperity.com.  No reasonable consumer would automatically associate this domain name with Prosperity Bank in Texas.  Therefore, the domain name does not

cause confusion.

Moreover, when the consumer enters www.ourprosperity.com on the computer, the consumer is redirected to Town and Country's website http://www. townandcountrybank.com. Unlike the Caterpillar defendants, Town and Country makes no reference to Prosperity or the Prosperity Marks on this website. Nor does Town and Country suggest any affiliation between the Quincy branch Peoples Prosperity Bank a division of Town and Country and Prosperity Bank in Texas. See Caterpillar, 2002 WL 1301304 , at *3. Further, every page on Town and Country's website contains, at minimum, a logo on the top left corner that states Town and Country Bank Peoples Prosperity Bank SidebySide. This logo eliminates any chance a consumer would think Prosperity registered the www.ourprosperity.com domain name. Therefore, Prosperity does not demonstrate that it would succeed on the merits of this infringement claim.

## V. CONCLUSION

Prosperity has not demonstrated a likelihood for success on the

merits in this trademark infringement action against Town and Country

for Town and Country's use of the Quincy branch bank name Peoples

Prosperity Bank a division of Town and Country or the domain name

www.ourprosperity.com.  Therefore, the Motion for Preliminary

Injunction is DENIED (d/e 2).

IT IS SO ORDERED.

ENTER: February 4, 2012

FOR THE COURT:              s/ Sue E. Myerscough
                        SUE E. MYERSCOUGH
                  UNITED STATES DISTRICT JUDGE